# In the United States Court of Federal Claims

| | |
|---|---|
| CHEREE NEWSON-PACE,<br><br>                     Plaintiff,<br><br>    v.<br><br>THE UNITED STATES,<br><br>                     Defendant. | No. 23-cv-0226<br>(Filed: June 20, 2025) |

Charles Ryan Morgan, Morgan & Morgan, P.A., Orlando, FL, for Plaintiff.

Ioana C. Meyer, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for Defendant. With her on the briefs were Brian M. Boynton, Principal Deputy Assistant Attorney General, Patricia M. McCarthy, Director, and Reginald T. Blades, Jr., Assistant Director.

## OPINION AND ORDER

Meriweather, Judge.

      Plaintiff, Ms. Cheree Newson-Pace, alleges that the Federal Emergency Management Agency ("FEMA") violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et. seq.*, by uniformly misclassifying Safety Advisors as exempt from overtime compensation and failing to pay them the correct rates for overtime hours worked. Compl. ¶¶ 19, 22, ECF No. 1. Ms. Newson-Pace seeks to bring this suit as a collective action and requests the entry of an Order permitting notice to be provided, under Court supervision, to putative collective members. Ms. Newson-Pace contends that she and putative collective members are similarly situated current or former FEMA employees, thereby meeting the standard required under the FLSA for providing notice to the collective. *Id.* ¶ 23. The United States argues that Ms. Newson-Pace has failed to make the required showing that all Safety Advisors nationwide are similarly situated, even under a lenient standard. *See* Def.'s Opp. to Pl.'s Mot. for Cond'l Cert. and Notice at 9, ECF No. 22 ("Opp."). The United States also opposes the form and manner of notice proposed by Ms. Newson-Pace. *Id.* at 18–22. Having reviewed the parties' briefs[1] and the relevant law, and for

---

[1] This opinion is based on the following filings: Compl., ECF No.1; Pl.'s Am. Mot. to Facilitate Notice, ECF No. 26 ("Mot."); Opp., ECF No. 22; Pl.'s Am. Reply, ECF No. 27 ("Reply"). Throughout, page citations to documents in the record refer to the document's original pagination, unless the page is designated with an asterisk (e.g., *1), in which case the reference is to the pagination assigned by PACER/ECF.

the reasons explained below, the Court **GRANTS IN PART** Plaintiff's Amended Motion to Facilitate Notice to Putative Collective Members, subject to revisions to the Notice and Consent forms.

## BACKGROUND

### A. Statutory Framework

The FLSA guards against "labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers." 29 U.S.C. § 202(a). To that end, the FLSA generally requires overtime compensation for employees who work more than forty hours per week. *See id.* § 207(a)(1). However, the FLSA exempts certain categories of employees from the overtime requirements. *See id.* § 213(a); *cf.* 5 C.F.R. § 551.202(c) (placing "burden of proof" on agency asserting FLSA exemption).

Under the FLSA, employees may bring an action against their employers for violations of the statute's overtime requirements. *See id.* § 216(b). Those suits "may be maintained . . . by any one or more employees for and [o]n behalf of himself or themselves and other employees similarly situated." *Id.* A case involving claims regarding the violation of multiple employees' rights is a "collective action." *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989). *See generally Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 74–78 (2013) (explaining the differences between FLSA collective actions and Rule 23 class actions). Similarly situated employees must opt-in to the collective action by giving their "consent in writing." 29 U.S.C. § 216(b); *see also Hoffmann-La Roche*, 493 U.S. at 176 (Scalia, J., dissenting) (noting that the plaintiff in a collective action "sue[s] in a representative capacity for other similarly situated employees who have consented to the representation" by opting in).

### B. Factual Background

#### 1. FEMA Safety Officers and Advisors

A core responsibility of FEMA is to coordinate the Federal Government's response to Presidentially declared disaster areas. Mot. at 2–3. To carry out this mission, FEMA is authorized to maintain "cadres" consisting of permanent full-time employees and intermittent reserve employees ("Reservists") "organized by operational or programmatic functions." FEMA Cadre Management Guide Excerpt, Mot., Ex. 4 at *1; *see also id.* ("A cadre is the operational mechanism the Agency maintains to effectively deliver FEMA programs . . . ."); *cf.* 42 U.S.C. § 5149(b)(1) ("[FEMA] is authorized to appoint and fix the compensation of such temporary personnel as may be necessary, without regard to the provisions of title 5 governing appointments in competitive service . . . .").

FEMA has a Safety Cadre ("SAF") whose purpose is to "provide[] a safe and healthy work environment at disaster sites and conduct[] job hazard analysis to identify and alleviate occupational risks, coordinate the purchase of proper equipment, and disseminate occupational safety and health hazard information." Opp. at 3. Under its organizational framework, SAF employs Reservist Safety Officers and Advisors, serving in roles such as the Safety and

Occupational Health Manager ("Safety Advisor").  *See* Mot. at 4–5; FEMA Organizational Chart, Mot., Ex. 6 at *1.  According to FEMA's Position Description, a Safety Advisor (job series IM-0018-03) "is responsible for anticipating, recognizing and controlling hazards in the workplace."  Mot., Ex. 3 at *1.  "At all times, Safety Advisors . . . report to the Cadre Coordinators as their Supervisor of Record at FEMA Headquarters."  Laird Decl., Opp., Ex. 1 ¶ 5.

FEMA classifies the Safety Advisor position as exempt from FLSA requirements for premium overtime pay under executive and administrative exemptions.  *See* Opp. at 4; 29 U.S.C. § 207(a)(1) ("no employer shall employ any of [its] employees who in any workweek is engaged in commerce . . . for a workweek longer than forty hours unless such employee receives compensation for [their] employment in excess of the hours above specified.").  Under the executive exemption, FEMA determined that the position "[c]ustomarily and regularly directs the work of two or more employee[s] [and] [h]as the authority to make or recommend hiring, firing, or other status-change decisions, when such recommendations have particular weight."  FLSA Checklist, Mot., Ex. 11 at *6; *see also* 5 C.F.R. § 551.205.  Under the administrative exemption, FEMA determined that the primary duties of the position are "office or non-manual in nature . . . directly related to the management or general business operations of the office . . . and . . . include[] the exercise of discretion and independent judgment with respect to matters of significance . . . [by] [p]rovid[ing] consultation or expert advice to management."  FLSA Worksheet, Mot., Ex. 11 at *7; *see also* 5 C.F.R. § 551.206.  Specifically, FEMA classified Safety Advisors as exempt under the FLSA because the position "[s]erves as the senior advisor to Federal Coordinating Officer (FCO) on all occupational safety and health concerns affecting and arising from the incident."  FLSA Worksheet, Mot., Ex. 11 at *7; *see also* Mot. at 14.

### 2. Ms. Newson-Pace's Allegations

Ms. Newson-Pace worked for FEMA from April 2020 to February 2022 as a Reservist Safety Advisor.  *See* Newson-Pace Decl., Mot., Ex. 7 ¶ 4; *see also* Notification of Personnel Action, Opp., Ex. 4 at *3.  Under the IM-0018-03 job series (also referred to separately as GS-0018), her base salary was "$37.71 per hour plus applicable locality pay."  Email to Plaintiff, Mot., Ex. 5 at *2 (emphasis in original); *see also* Mot. at 14; Mot., Ex. 3 at *1.  FEMA classified her position as "exempt" pursuant to the FLSA.  Opp., Ex. 4 at *3.  During her employment, she worked in "approximately 6 states at 11 different disaster sites."  Mot., Ex. 7 ¶ 7.  Her SAF deployments included "hurricane, severe storms, Covid-19, and other types of disaster sites."  *Id.* ¶ 19.  At each deployment, Ms. Newson-Pace's job duties included performing health and safety inspections of FEMA facilities and reporting her findings to SAF supervisors, holding safety orientations using SAF-provided presentations, carrying out fire, evacuation, and safety drills, facilitating the completion of Job Hazard Analysis forms, and attending briefings and meetings with SAF-provided talking points.  *Id.* ¶¶ 12–17; *see also* Mot., Ex. 3.

### C. Procedural History

On February 15, 2023, Ms. Newson-Pace filed her Complaint in this Court, alleging that FEMA uniformly misclassified Safety Advisors as exempt from premium overtime compensation and thus has violated the FLSA with respect to both herself and putative collective

members. *See* Compl.; Mot. at 1. Although FEMA paid Ms. Newson-Pace overtime compensation at her "straight-time" hourly rate of pay, she contends that she should have been classified as non-exempt under the FLSA and entitled to overtime compensation paid at time and a half of her regular rate of pay. Compl. ¶ 3; Mot., Ex. 7 ¶ 20. She argues that Safety Advisors are non-exempt under the FLSA because they are "doing nothing more than applying well-established techniques, procedures and specific standards set forth by FEMA and other federal agencies." Mot. at 16 (citing 5 C.F.R. § 551.206(e), (n)): *see also* Mot., Ex. 7 ¶ 11 ("[W]e were the 'work horses' out in the field."). Ms. Newson-Pace further contends that regardless of the type of disaster site, her primary job duties and procedures followed at each site were the same, Mot., Ex. 7 ¶ 19, and that she did not supervise or manage employees, *id.* ¶ 10. As such, she argues that she did not perform "exempt" job duties as defined by FLSA regulations. Compl. ¶ 18.

After the Complaint was filed, Ms. Phyllis Nix-Ford and Mr. Tuan Ngo filed Notices of Consent to become party plaintiffs. *See* ECF Nos. 9, 14.[2] The Court held a preliminary scheduling conference, set a discovery schedule, and ordered the parties to submit initial disclosures. *See* Minute Entry, August 10, 2023; Order, ECF No. 13. On September 21, 2023, the Court granted the United States' unopposed Motion for a Protective Order and entered the Protective Order. *See* ECF Nos. 16, 17.

Ms. Newson-Pace subsequently filed the instant Motion to Facilitate Notice to Putative Collective Members. *See* Mot.[3] In that motion, Ms. Newson-Pace requests that the Court authorize distribution of the proposed Notice of Lawsuit with Opportunity to Join, Mot., Ex. 1, and Consent to Join Collective Action forms, Mot., Ex. 2, to putative collective members, thereby conditionally certifying the collective. *See* Mot. at 1–2, 12. The putative collective proposed by Ms. Newson-Pace includes individuals who served as FEMA SAF Safety Advisors during the three-year period preceding the Court's ruling on the motion.[4] *Id.* at 25. Ms. Newson-Pace asserts that other FEMA Safety Advisors with the same job duties also worked overtime but were not paid the additional half-time premium. Mot., Ex. 7 ¶ 21. She argues that the evidence on the record, including declarations from two other employees and herself, meets the "modest factual showing" required to demonstrate that she and other putative members are "similarly situated" employees and thus distribution of the proposed notice and consent forms is proper. Mot. at 12–13 (citing *Barry v. United States*, 117 Fed. Cl. 518, 520–21 (2014)); 29 U.S.C. § 216(b). The motion is fully briefed. *See* Opp., Reply. On October 31, 2024, the Court granted the parties' request to modify the discovery schedule and file a "Phase II" discovery and

---

[2] Two additional opt-in plaintiffs later withdrew. *See* Notices, ECF Nos. 18, 19.

[3] Ms. Newson-Pace's motion was originally filed on March 15, 2024. On May 8, 2024, the Court ordered it stricken from the record for failure to comply with Rule 5.4(a). *See* Order, ECF No. 24. The Court ordered Ms. Newson-Pace to refile amended versions of the Motion and Reply. *See id.*

[4] This definition of the putative collective does not include individuals who served as SAF Safety Leads during this time period. *See* Reply at 2 n.4.

motion briefing schedule after the Court has ruled on the present motion. *See* Order, ECF No. 34.

## DISCUSSION

Ms. Newson-Pace requests that the Court allow this case to proceed as a collective action and facilitate providing notice to other FEMA employees who are potential plaintiffs. The parties dispute the legal and procedural framework under which the Court should evaluate that request and the adequacy of Ms. Newson-Pace's assertion that the potential plaintiffs are similarly situated to her and should receive notice of her suit. Given the lack of any guidance from the Federal Circuit, and the parties' competing positions, the Court must first determine what framework will govern its resolution of the pending motion. The Court will then evaluate Ms. Newson-Pace's allegations under the appropriate standard.

### A.   Standard for Joinder in FLSA Collective Actions

The FLSA does not prescribe a process or standard to govern joinder of putative collective members, and instead gives courts "wide discretion." *Smith v. United States*, 156 Fed. Cl. 471, 478 (2021) ("*Smith I*") (citing *Hoffmann–La Roche*, 493 U.S. at 169–71); *accord Smith v. United States*, 163 Fed. Cl. 155, 165 (2022) ("*Smith II*"). Nor does the FLSA define "similarly situated" or articulate a test to demonstrate that a prospective collective action member is "similarly situated" to the plaintiff. Federal trial courts have "discretion . . . to implement 29 U.S.C. § 216(b) . . . by facilitating notice to potential plaintiffs." *Hoffmann-La Roche*, 493 U.S. at 169. The Court's involvement in the notice process ensures that parties are joined in "an efficient and proper way." *Id.* at 171.

In the absence of a controlling rule or standard, courts have taken different procedural approaches to joinder and the provision of notice in FLSA collective actions. Several rulings from this Court apply a two-step analysis in which the judge first conditionally certifies a collective if the plaintiff makes a modest showing that the proposed members are similarly situated to plaintiff, and then, after discovery, more closely scrutinizes whether the collective members are similarly situated and decertifies the collective if they are not. *See, e.g.*, *Smith II*, 163 Fed. Cl. at 165–66; *Gayle v. United States*, 85 Fed. Cl. 72, 77 (2008); *Valte v. United States*, 155 Fed. Cl. 561, 567 (2021) (collecting cases). The first step of that analysis is relatively lenient, but nonetheless requires "'substantial allegations, supported by evidence, that the classification was due to a common decision, policy, or plan." *Smith II*, 163 Fed. Cl. at 167 (quoting *Smith v. United States*, No. 13-161C, 2014 WL 3940494, at *2 (Fed. Cl Aug. 11, 2014)). At step two, the court either grants final certification of the collective action or decertifies the collective, dismisses the opt-in plaintiffs without prejudice, and permits any remaining individuals to proceed to trial.[5] However, if final certification is granted, "the action

---

[5] At the close of discovery, under step two of this approach, a "defendant may move to decertify the collective action on the basis of evidence developed during discovery by demonstrating that the collective action plaintiffs are not similarly situated." *Gayle*, 85 Fed. Cl. at 77. If the court decides not to grant final certification, "the court decertifies the [collective],

proceeds to trial on a representative basis." *Smith I*, 156 Fed. Cl. at 479 (quoting 7B Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1807 (3d ed. 2021)). This approach is the predominant method applied in this Court and is followed by many district courts including the United States District Court for the District of Columbia. *See, e.g.*, *Ardon v. United States*, 174 Fed. Cl. 97, 106 (2024) (collecting cases); *Dinkel v. MedStar Health, Inc.*, 880 F. Supp. 2d 49, 52 (D.D.C. 2012) (collecting cases). At least four federal circuit courts have endorsed this two-step approach. *See Halle v. West Penn Allegheny Health Sys. Inc.*, 842 F.3d 215, (3d Cir. 2016); *Myers v. Hertz Corp.*, 624 F.3d 537, 554–55 (2d Cir. 2010) (concluding that the two-step method is "sensible" although neither the FLSA nor Supreme Court precedent require its use); *Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1218–19 (11th Cir. 2001) (recommending but declining to require that district courts use the "two-tiered approach" to certify collective actions but noting that district courts have discretion to select a methodology); *Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1105 (10th Cir. 2001) (concluding district court did not abuse its discretion in applying the two step approach and describing it as "arguably . . . the best of the three approaches outlined" for determining whether potential plaintiffs are similarly situated).

Other courts, including the Fifth and Sixth Circuit, conduct a single-step analysis centered on determining whether other employees are sufficiently similarly situated to the plaintiffs to participate in the litigation. *See, e.g.*, *Swales v. KLLM Transp. Servs., L.L.C.*, 985 F.3d 430, 441–43 (5th Cir. 2021); *Clark v. A&L Homecare & Training Ctr. LLC*, 68 F. 4th 1003, (6th Cir. 2023). The Fifth Circuit has rejected the two-step approach, reasoning that "its flexibility has led to unpredictability" and that "its rigidity distracts district courts from the ultimate issues before it." *Swales*, 985 F.3d at 441 (cleaned up). Instead, the Fifth Circuit has directed district courts to: (1) "identify, at the outset of the case, what facts and legal considerations will be material to determining whether a group of 'employees' is 'similarly situated'"; (2) "authorize preliminary discovery accordingly"; and (3) "consider all of the available evidence" to determine "whether and to whom notice should be issued." *Id.* at 441–42. That standard reflects the Fifth Circuit's judgment that "the FLSA's similarity requirement is something that district courts should rigorously enforce at the outset of the litigation." *Id.* at 443. The Sixth Circuit applies a similar, but less stringent, approach that requires plaintiffs to show "a strong likelihood" that the employees to whom the court-facilitated notice is sent are "similarly situated to the plaintiffs themselves." *Clark*, 68 F.4th at 1011. That court reasoned that a more lenient standard could cause notice to be sent to employees who are not eligible to join the suit, which is tantamount to an improper solicitation of claims. *Id.* at 1010.

A minority of courts apply the Rule 23 class certification procedures that govern class actions. *See Swales*, 985 F.3d at 437 (noting that "only a few courts" require plaintiffs seeking certification of a collective action to satisfy Rule 23); *Valte*, 155 Fed. Cl. at 568 & n.5 (collecting cases applying Rule 23 standards to FLSA collective actions). *Shushan v. University of Colorado* is the seminal case for that approach, and that court concluded "that the named representative plaintiffs in a [Section 216] class action must satisfy all the requirements of Rule 23, insofar as those requirements are consistent with 29 U.S.C. § 216(b)." 132 F.R.D. 263, 265

---

dismisses the opt-in plaintiffs without prejudice, and permits any remaining individuals to proceed to trial." *Smith II*, 163 Fed. Cl. at 166 (2022) (quoting *Smith I*, 156 Fed. Cl. at 479).

(D. Colo. 1990) (cleaned up). That approach treats collective actions as similar to class actions, instead of construing Section 216 "as a permissive joinder device." *Id.* at 269.

Finally, some judges have disclaimed any formal process and liberally allow cases to proceed as collective actions. For example, *Turner v. Chiptole Mexican Grill, Inc.*, a case litigated in the District of Colorado, rejects the two-step analysis and holds that courts should "presumptively allow workers bringing the same statutory claim against the same employer to join as a collective, with the understanding that individuals may be challenged and severed from the collective if the basis for their joinder proves erroneous." 123 F. Supp. 3d 1300, 1309 (D. Colo. 2015). Under that streamlined approach, challenges to the propriety of joinder are reviewed using Federal Rules of Civil Procedure 21 (misjoinder) and 42 (severance). *See id.* Ms. Newson-Pace construes *McClendon v. United States*, No. 12-81C, 2013 WL 285584, at *2 (Fed. Cl. Jan. 24, 2013), as taking a similarly permissive approach. *See* Mot. at 11. In *McClendon*, the Court appears to have simply facilitated notice to the collective without making a detailed finding regarding whether plaintiffs were similarly situated. *See* 2013 WL 285584, at *2 (noting that the FLSA "permits an employee to file suit on behalf of himself and other employees who are similarly situated—however he may define 'similarly situated'").

Here, the Court will apply the two-step conditional certification standard. Some courts that have rejected that standard in favor of a single-step analysis have criticized the two-step approach as too lenient and a source of undue delay. *See, e.g.*, *Swales*, 985 F.3d at 441–42; *Clark*, 68 F.4th at 1010–11. *Valte* suggests that the two-step standard mistakenly analogizes the notice process to class certification, and that it is preferable and more accurate to simply determine whether plaintiffs have adequately shown that they are similarly situated to the individuals to whom they wish to send notice. 155 Fed. Cl. at 573–74. The Court appreciates the efficiency and appeal of a single-step standard, but finds the two-step analysis more appropriate for this case. Requiring a modest showing that those who will receive notice are similarly situated to putative collective members may cast a wider net than a standard that imposes stricter evidentiary burdens up front. But it recognizes the limitations that plaintiffs face in identifying collective members at this early stage of the litigation and allows notice to be sent before extensive discovery. If discovery reveals that notice was distributed too widely, the collective can be narrowed through the "decertification" process. Thus, the two-step standard provides a balanced and sensible means of defining a Section 216 collective. The Court declines to apply the Rule 23 standard, because that approach "is difficult to square with FLSA, which refers to 'similarly situated' individuals, not to numerosity, commonality, typicality, and so forth." *Valte*, 155 Fed. Cl. at 568. The Court also declines to adopt the permissive approach Ms. Newson-Pace advocates, as some threshold showing that notice recipients are "similarly situated" seems necessary to avoid the improper "solicitation of claims." *Hoffman-La Roche*, 493 U.S. at 174.

### B.     Putative Collective Members Are Similarly Situated

To clear the first step of the collective joinder analysis, Ms. Newson-Pace must make a "modest factual showing" that putative collective members are similarly situated to absent, putative collective members. *Smith II*, 163 Fed. Cl. at 165 (quoting *Valte*, 155 Fed. Cl. at 567). A plaintiff may "satisfy the evidentiary burden . . . by showing that the pleadings, affidavits, and

other available evidence support the conclusion that potential [collective] members are similarly situated." *Id.* (quoting *Gayle*, 85 Fed. Cl. at 77). This is a lenient standard, although a court may apply more scrutiny according to the amount of discovery that has occurred. *See id.* at 167 (collecting cases). "To satisfy the similarly situated standard, courts inquire whether the named plaintiff has demonstrated a 'factual nexus' between his or her situation and the situation of other current and former employees." *Gayle*, 85 Fed. Cl. at 79 (cleaned up). "Being similarly situated means that one is subjected to some common employer practice that, if proved, would help demonstrate a violation of the FLSA." *Valte*, 155 Fed. Cl. at 571 (cleaned up). At this stage, the "modest" standard for conditional certification at most demands "substantial evidence, supported by the allegations, that the classification was due to a common decision, policy, or plan." *Smith II*, 163 Fed. Cl. at 171 (cleaned up). An employer's mere "objection that distinctions exist in job titles, functions, or pay will not stand in the way of conditional certification when an overarching nexus is present." *Whalen v. United States*, 85 Fed. Cl. 380, 386 (2009) (cleaned up). In making this determination, "the court does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations." *Gayle*, 85 Fed. Cl. at 77 (quoting *Lynch v. United Servs. Auto. Ass'n*, 491 F. Supp. 2d 357, 368 (S.D.N.Y. 2007)).

If a plaintiff satisfies the first step, "the collective action will be conditionally certified and notice may be sent to potential collective action plaintiffs." *Gayle*, 85 Fed. Cl. at 77. A conditionally certified collective "does not produce a class with an independent legal status, or join additional parties to the action." *Genesis Healthcare*, 569 U.S. at 75. Nor does it bind absent individuals or bar a potential collective member from pursuing her own claim if she chooses not to opt-in to the suit. *See Valte*, 155 Fed. Cl. at 566. It is only a "court-created threshold for determining whether to send court-approved notice to absent individuals who appear to be similarly situated to the plaintiffs." *Id.* at 567 (quoting *Genesis Healthcare*, 569 U.S. at 75).

Ms. Newson-Pace argues that putative collective members are similarly situated FEMA SAF Safety Advisors, and distribution of the proposed notice and consent form is therefore proper. *See* Mot. at 1–2. She contends that the record "clearly satisfies" the "lenient evidentiary burden" for conditional certification, *id.* at 18, because she and other Safety Advisors (1) had the same job title within FEMA's organizational chart, (2) were hired under the same job series, (3) held positions uniformly classified as exempt from overtime compensation, (4) were paid at an hourly rate without the half-time premium for overtime hours, and (5) carried out similar job duties regardless of the date or location of deployment. *See id.* at 13–17, 19. In support, Ms. Newson-Pace provides: exhibits showing the job title and job series in question, *see* Position Description Form OPM OF 8, Mot., Ex. 11; Statements of Earnings and Leave, Mot. Ex. 14; FEMA Organizational Chart, Mot., Ex. 6; the position's classification as exempt from premium overtime compensation, *see* Mot., Ex. 11; and the position's hourly pay rate and overtime hours without the half-time premium, *see* Mot., Ex. 14. Additionally, Ms. Newson-Pace submits three declarations, including her own, attesting to the similarity of job duties performed by Safety Advisors regardless of the deployment location. *See* Mot., Ex. 7; Nix-Ford Decl.; Mot., Ex. 8; Ngo Decl., Mot., Ex. 9; *cf.* FEMA SA Position Posting, Mot., Ex. 10 at *3; Deployment History Reports (all Declarants), Mot., Ex. 13. These Declarants also assert their personal knowledge that other Safety Advisors had the same primary job duties, worked overtime, and similarly were not paid the additional half-time premium for this work. *See* Mot., Ex. 7 ¶ 21; Mot., Ex. 8 ¶ 18;

Mot., Ex. 9 ¶ 18. Ms. Newson-Pace asserts that this evidence "creates the requisite common question of fact and law" to find that plaintiffs are similarly situated. Mot. at 14.

The Court concludes that Ms. Newson-Pace amply satisfies the "modest" showing necessary at the first step. Here, the common FEMA SAF job classification more than satisfies the requisite "factual nexus," and the submitted declarations further establish that employees classified as Safety Advisors performed substantially the same tasks across worksites and various types of disasters. *See Smith II*, 163 Fed. Cl. at 168. Indeed, the United States does not dispute that the proposed collective of FEMA Safety Advisors "share[d] the same position," "were uniformly classified as exempt," and had the same "pay structure." Reply at 1; *cf.* Opp. at 9–11 (disputing only how much weight to afford those allegations). Instead, the United States contends that minor differences between putative collective members "depending on individual, time, geography, and disaster" must first "be harmonized in order to justify collective treatment for the entire requested collective." Opp at 14. The Court is unconvinced that these objections present a sufficient basis to refuse conditional certification at step one. *See Whalen*, 85 Fed. Cl. at 386. Such member-specific issues are typically addressed at step two in a motion for decertification. *See, e.g.*, *Meyer v. Panera Bread Co.*, 344 F. Supp. 3d 193, 207–08 (D.D.C. 2018) ("Although defendants often argue that the necessity of fact-intensive individualized inquiries will render a collective action unmanageable, courts tend not to consider such arguments at the conditional certification stage, and, instead, put these issues off until the decertification stage, when discovery is complete." (cleaned up)).

Moreover, Ms. Newson-Pace relies on two factually similar cases from this Court where conditional notice was approved. In *Barry v. United States*, the proposed definition of the collective was limited to two specific positions within the U.S. Department of Homeland Security who "had their FLSA exemption status converted from exempt to non-exempt" within a three-year time period. 117 Fed. Cl. 518, 521–22 (2014). The United States raised similar objections that such a definition "encompasses employees who did not work in the same regional offices under the same timekeeping and compensation procedures as the named plaintiffs." *Id.* at 522. But the *Barry* court rejected such objections as "clearly without merit," finding instead "that the proposed [collective] members are similarly situated" because they "occupy the same positions in the same specific job series under the General Schedule," and evidence of a "nationwide policy" exists where those "positions had been, on a nationwide basis, designated FLSA exempt." *Barry*, 117 Fed. Cl. at 521–22. The United States does not cite and makes no attempt to distinguish *Barry* in its opposition brief.

Ms. Newson-Pace also contends that her case is factually similar to *A.T. Lynne v. United States*, No. 20-cv-566, slip op. (Fed. Cl. May 3, 2021), Mot., Ex. 15, and the outcome—conditional certification of a collective of FEMA employees—should be the same. *See* Mot. at 19. The *Lynne* court did not rely solely on a common exempt classification; rather, it cited the plaintiffs' common "job position, at the same agency (FEMA), falling under the same leadership organizational structure" regardless of deployment location or type of disaster as lending support to a finding that putative members are similarly situated. Mot., Ex. 15 at 2. Specifically, the *Lynne* court noted that the agency utilized a single position description for the job in question regardless of location or type of disaster, that all putative members performed the same duties per the position description, and that the position within FEMA's organizational framework is

9

the same regardless of the location or type of disaster. *Id.* The court also cited as support for conditional certification the affidavits submitted by the plaintiff and another employee, both asserting that they performed similar duties at every deployment. *Id.* at *3. The United States contends, in a single paragraph, that *Lynne* is not applicable here because Ms. Newson-Pace has not shown that the position duties of the putative collective "are identical regardless of the location of the deployment or the type of disaster." Opp. at 14. But the *Lynne* court rejected similar objections, finding instead "occupational uniformity" among the proposed collective based on a position description form "indicat[ing] the same essential duties and requirements" for all putative members. Mot., Ex. 15 at 2. The Court makes a similar finding here.

The United States raises other unpersuasive objections to the proposed collective definition. The United States first contends that the supporting declarations contain hearsay evidence that should not be considered. Opp. at 16–17. However, this Court commonly allows plaintiffs to submit declarations in support of a motion to certify a collective in an FLSA action, even if the evidence otherwise would be considered hearsay. *See, e.g.*, *Whalen*, 85 Fed. Cl. at 386 ("In their declarations, potential members of the collective action have averred, based on relevant personal knowledge, that all [employees] are affected by the same [agency] policies and procedures."); *Gayle*, 85 Fed. Cl. at 79 ("[T]he government's challenge based upon credibility is unavailing, and plaintiff's declaration suffices for the modest showing required for the first step of the two-step approach."). Unsurprisingly, the United States' opposition brief cites only cases from other jurisdictions. *See* Opp. at 16. The United States next argues that the declarations, if considered, "offer little, if any, evidentiary value" in support of Ms. Newson-Pace's motion because they merely repeat "conclusory allegations" from the Complaint. Opp. at 16. Declarations in a FLSA action generally have evidentiary value when they "point to the same breadth of conduct and work conditions." *Smith II*, 163 Fed. Cl. at 169. Ms. Newson-Pace and the two other declarants have worked in approximately 23 states, two U.S. territories, and 49 different disaster sites in total, and they aver that their primary job duties remained consistent. *See* Mot. at 17; Mot., Ex. 13; Mot., Ex. 7 ¶¶ 19–21; Mot., Ex. 8 ¶¶ 16–18; Mot., Ex. 9 ¶¶ 16–18. These declarations therefore corroborate Ms. Newson-Pace's claims in her complaint and further demonstrate that she has made a modest factual showing that she and putative collective members are similarly situated. *See Smith II*, 163 Fed. Cl at 171.

In sum, the United States' opposition is primarily based on case management concerns, specifically the need for an individualized inquiry into the duties of each putative collective member. These concerns are not merited because Ms. Newson-Pace has successfully made a modest factual showing, based on the evidence and declarations proffered at this initial stage, that she and the putative collective members are similarly situated. *See Gayle*, 85 Fed. Cl at 77.

### C. Ms. Newson-Pace Must Revise the Notice and Consent Forms; Limited Discovery Is Authorized.

Having found that the putative collective members are similarly situated, the Court now turns to the Notice and Consent forms proposed by Ms. Newson-Pace and her request for limited discovery. The proposed "Notice of Lawsuit with Opportunity to Join" form ("Notice") informs the recipient of the pending lawsuit and that the Court has not yet taken a position on the merits of the claims. Mot., Ex. 1 at 1. The Notice explains how the recipient may join the suit by

completing the "Consent to Join Collective Action" form ("Consent") and the effect of joining the suit on their rights individually. *Id.* at 2–3. The Consent form provides a mailing address and email addresses where the recipient may return the form. *See* Mot., Ex. 2 at 2. In her motion, Ms. Newson-Pace requests the Court's approval to send the Notice and Consent forms to all similarly situated Safety Advisors via email and first-class postal service mail. *See* Mot. at 22. She also requests the Court's approval to send these forms via text message in order to "increase the chance that potential [collective] members receive notice of the lawsuit." *Id.* at 23.

To this end, Ms. Newson-Pace asserts that limited discovery is necessary. *See* Mot. at 27. She requests that the Court order FEMA to provide her with a list of names, addresses, phone numbers, and e-mail addresses of "all individuals who were employed by Defendant [as a Safety Advisor] during the three-year period preceding the Court's ruling on the instant Motion." *Id.* at 25; *see also id.* at 27. She argues that "[t]he FLSA allows a Plaintiff to collect damages within a three-year statute of limitations" upon a showing "that the 'employer either knew, or showed reckless disregard for the matter of whether its conduct was prohibited by the statute.'" *Id.* at 25 (quoting *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988)). To facilitate replies to the Notice, she requests Court approval for an electronic signature option on the Consent form and a 60-day notice period for putative collective members to return their Consent forms. *See id.* at 24–26.

The Court agrees, in part, with the United States that some revisions to the proposed Notice and Consent forms are necessary before this Court's approval and distribution to putative collective members. First, Ms. Newson-Pace must add provisions to the Notice form that briefly explain the consequences of joining the action, including any arrangement regarding attorney's fees to be paid out and that potential plaintiffs have the right to be represented by an attorney of their choice and how to exercise that right. *See* Reply at 18 (citing notice language from *Whalen*). To avoid a chilling effect on participation, the Court will not require a statement that plaintiffs could be liable for defense costs if they do not receive a favorable judgment. *See id.* n.10. Second, the Consent form must require potential plaintiffs to affirmatively confirm that they meet the classifications to join the collective. However, these classifications are not as narrow as the United States proposes. *See* Opp. at 21. Rather, potential plaintiffs must confirm that they were employed as FEMA Safety Advisors and deployed to any disaster sites nationwide during the three years prior to the filing of this opinion. And finally, the Consent form may include an electronic signature option.

As to discovery, the United States opposes production of telephone numbers and FEMA email addresses because Ms. Newson-Pace has not shown a "special need" for this information and there is a "risk of improper solicitation and intrusion into the privacy" of potential plaintiffs. Opp. at 22 (citing *Arevalo v. D.J.'s Underground, Inc.*, No. DKC-09-3199, 2010 WL 4026112, at *2 (D. Md. Oct. 13, 2010)). As an alternative, the United States proposes that FEMA send electronic copies of the Notice and Consent forms to the work e-mail address of any current FEMA Safety Advisor and produce proof of such transmission. *Id.* Both the Court and Ms. Newson-Pace agree with this approach to notification of current FEMA Safety Advisors via email. Reply at 20. Furthermore, the United States must produce the names and addresses of all current and former Safety Advisors deployed within the past three years and deliver this information to Ms. Newson-Pace. The United States must also produce and deliver the personal

11

emails, where available, of former Safety Advisors deployed during the past three years. The United States also argues that the Court must issue a protective order for any production of names, addresses, and telephone numbers of potential plaintiffs, pursuant to the Privacy Act, 5 U.S.C. § 552a. *See* Opp. at 21. Ms. Newson-Pace does not oppose this request. *See* Reply at 19. There is a Protective Order presently in force in this case, and it remains in effect unless rescinded by the Court. *See* Protective Order, ECF No. 17. And, considering the need to protect employees' privacy, the Court will not require the United States to produce phone numbers of current or former Safety Advisors.

## CONCLUSION

For the reasons set forth above, the Court finds that Ms. Newson-Pace and putative collective members are similarly situated and therefore conditional certification is appropriate in this matter. Accordingly, the Court hereby **GRANTS IN PART** Plaintiffs' Amended Motion to Facilitate Notice, ECF No. 26, subject to the following revisions to the Notice and Consent forms:

(1) Plaintiff is **DIRECTED** to make the following revisions to the Notice form:
   - Insert a brief explanation of the consequences of joining the action, including any arrangement regarding attorney's fees to be paid out, that potential plaintiffs have the right to be represented by an attorney of their choice, and how to exercise that right.

(2) Plaintiff is **DIRECTED** to make the following revisions to the Consent form:
   - Putative collective members must affirmatively confirm that they meet the required classifications to join the collective, specifically (1) that they were employed as FEMA Safety Advisors and deployed to any disaster site nationwide, (2) during the three years prior to the filing of this opinion.
   - The Consent form may include an electronic signature option.

(3) Plaintiff **SHALL** make these revisions and provide Defendant with the revised forms for review by July 1, 2025.

(4) The parties are **DIRECTED** to file a Joint Status Report by July 9, 2025, with the revised Notice and Consent forms attached as exhibits, and indicating whether the parties agree on the contents of the forms.

(5) In the Joint Status Report, the parties **SHALL** provide a proposed schedule for (1) limited discovery, (2) issuance of notice to the collective according to a 60-day notice period, and (3) future proceedings before the Court after the close of the opt-in period. The Court will then issue a separate Order approving the revised Notice and Consent forms, if merited, and setting a schedule for discovery, notice, and future proceedings.

(6) During the limited discovery period, Defendant **SHALL** provide Plaintiff with the names and addresses of all Safety Advisors employed by FEMA during the three-year period prior to the filing of this opinion. In addition, Defendant **SHALL** provide Plaintiff with the personal emails, if known, of former Safety Advisors employed during this time.

(7) Upon commencement of the notification period, Defendant **SHALL** distribute the approved Notice and Consent forms to current Safety Advisors deployed during the past three years to their active FEMA email addresses. Defendant **SHALL** also provide notice of this transmission to Plaintiff.

**IT IS SO ORDERED.**

_____
ROBIN M. MERIWEATHER
Judge